Filed 6/30/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL CAMPBELL,<br><br>Defendant and Appellant. | A162472<br><br>(Alameda County<br>Super. Ct. No. 164869D) |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY B. PRICE,<br><br>Defendant and Appellant. | A162488<br><br>(Alameda County<br>Super. Ct. No. 164869B) |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEPHON ANTHONY,<br><br>Defendant and Appellant. | A162623<br><br>(Alameda County<br>Super. Ct. No. 164869A) |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL FLOWERS,<br><br>Defendant and Appellant. | A163277<br><br>(Alameda County<br>Super. Ct. No. 164869C) |

Appellants, who were jointly convicted of murder in connection with a gang-related shooting, appeal from a decision by the trial court denying them resentencing relief under Penal Code[1] section 1172.6[2] from their first degree murder convictions. They contend the trial court erred in relying on the jury's intent to kill findings in connection with two special circumstances to conclude as a matter of law they are not eligible for relief. We agree with the People that the trial court was entitled to consider the finding but, based on a recent decision by our high court, conclude that the intent to kill finding does not preclude relief as a matter of law. Because the trial court must consider the trial evidence and assess the strength and credibility of the evidence, section 1172.6 requires that it issue an order to show cause and conduct an evidentiary hearing. We remand the section 1172.6 proceedings for that purpose.

Appellant Anthony drove the car in which Appellants fled from police after they shot and killed the brother of a rival gang member. Two bystanders were hit and killed during the ensuing vehicle chase; this resulted in two second degree murder convictions for each of the Appellants. The trial court granted relief under section 1172.6 to three Appellants (Price, Campbell and Flowers) from these two second degree murder convictions.[3] These three

---

[1] All further statutory references are to the Penal Code except as otherwise indicated.

[2] Section 1172.6 (former section 1170.95) provides persons convicted of murder prior to the 2019 amendments to the murder statutes to seek relief from such convictions in the trial court if they could not be convicted of murder under the current murder statutes. (See section 1172.6; Stats. 2018, ch. 1015, §4.)

[3] For someone other than the actual killer to be liable for a murder under the new statutes, he must have either aided and abetted a first degree

2

Appellants argue the trial court did not go far enough and should also have granted them relief from their convictions under Vehicle Code section 2800.3 arising out of the same two bystander killings. They also contend that, after granting them relief on the second degree murder convictions, the trial court erred by failing to explicitly strike the multiple-murder special circumstance found true by the jury as to each of them. Finally, these three Appellants seek resentencing on the Vehicle Code convictions based on recent legislation constraining sentencing decisions about whether and when to impose upper, middle and lower terms of imprisonment. We agree in part and disagree in part with the contentions of these three Appellants. We remand for the trial court to strike the multiple murder special circumstance as to these three Appellants. We affirm the trial court's denial of relief under section 1172.6 for the Vehicle Code convictions, but we remand for resentencing based on an amendment to section 1170, subdivision (b), that could affect the sentences imposed for those convictions.

All Appellants also seek, from this court directly, retroactive relief from the verdicts imposing a gang-related gun enhancement and a gang-murder special circumstance on each of them. They seek retroactive application of an ameliorative change in the law governing gang-related crimes that the Legislature adopted between the time of the trial court proceedings and the filing of these appeals. The People argue that the change in law was not a

murder with intent to kill or been a major participant in certain specified crimes and acted with reckless indifference to human life. (§ 189, subd. (e).)

Anthony did not seek relief from the second degree murder convictions, presumably because as the driver of the vehicle he was the actual killer of the two bystanders. Under section 189, a person who, as a participant in a first degree premeditated murder, is the actual killer of another person may be guilty of murder for the latter killing, even if unintentional. (See § 189, subds. (a), (e).)

valid amendment to the gang-murder special circumstance. We disagree based on the reasoning of two of our sister courts, which we adopt, and we therefore reverse the gang-murder special circumstance. The People also contend the instruction on the pre-amendment gang statute was harmless error as to the gang-related gun enhancement found by the jury. We disagree and reverse the enhancement as well. We also reverse the 25-years-to-life sentences resulting from the enhancement and the life without parole sentences resulting from the gang-murder special circumstance. We remand the gang enhancement and gang special circumstance for retrial at the option of the People or, if the People choose not to retry Appellants on the gang enhancement and gang special circumstance, for resentencing without them.

Finally, these appeals also challenge the trial court's decision, on remand under a recent statute providing it with discretion to strike enhancements and prior strikes, declining to strike either the enhancements or the prior strikes. We conclude the trial court did not abuse its discretion in declining to strike the enhancements and the prior strikes.

## BACKGROUND

### A. Trial and Direct Appeal

In 2013, after a 39-day trial, a jury found Appellants[4] Stephon Anthony, Rafael Campbell, Samuel Flowers and Anthony B. Price guilty of the first degree murder of Charles Davis, after Anthony drove them into the territory of a rival gang in Berkeley and Flowers used a semi-automatic assault rifle to fire 17 bullets at the brother of a member of the rival gang. There was evidence that the killing was motivated by the desire to retaliate

---

[4] For clarity, we refer to Appellants as such throughout this opinion whether we are discussing the trial, the original appeal or the remand and resentencing proceedings.

4

against the Berkeley gang Appellants believed had murdered Ngo Nguyen, a member of the Oakland gang to which Appellants belonged. The jury found true an enhancement for gang-related use of a firearm by a principal. The jury also found Appellants guilty of two counts each of vehicular evasion of a police officer causing death and two counts each of second degree murder, both based on the killings of a pedestrian (Ross) and the driver of a car (Perea), who were killed in a collision in which Anthony drove Appellants in a high-speed vehicle chase seeking to evade police after the shooting.

As to the first degree murder count, the jury also found true as to each Appellant two special circumstance allegations: first, that he intentionally killed the victim while he was an active participant in a criminal street gang and the murder was carried out to further the activities of the gang (§190.2, subd. (a)(22)), and second, that he intended to kill Davis and committed multiple murders in this case (*id.*, subd. (a)(3)). Two of the Appellants waived a jury trial on allegations that they had prior felony convictions, and the trial court found the allegations true.

On direct appeal, this court affirmed the convictions. In our opinion, we addressed, among other things, Appellants' claim of *Chiu* error[5] and held any error in the instruction on natural and probable consequences in connection with Appellants' first degree murder convictions was harmless beyond a reasonable doubt. (*People v. Anthony*, 32 Cal.App.5th 1102, 1142-

---

[5] *People v. Chiu* (2014) 59 Cal.4th 155) (*Chiu*). In *Chiu*, the court held that an aider and abettor may not be held liable for first degree murder under a natural and probable consequences theory, that is, for aiding and abetting some other offense, the natural and probable consequence of which was murder. Subsequently, the Legislature codified that holding and went beyond it to eliminate the natural and probable consequences doctrine as a basis for any degree of murder and limiting the application of the felony murder doctrine. (*People v. Lewis* (2021) 11 Cal. 5th 952, 957 (*Lewis*).)

1146 (*Anthony I*).)  We remanded the case for the trial court to exercise the discretion newly conferred on it by legislation enacted after the trial to strike or dismiss consecutive 25-years-to-life sentences imposed on all Appellants for a gang-related principal's use of a firearm (see Stats. 2017, ch. 682; §12022.53, subd. (h)) and, with respect to Price and Campbell, to strike additional consecutive five-year enhancements for prior serious felony convictions.  (See Stats. 2018, ch. 1013, §§ 1-2, amending §§ 667, subd. (a) and 1385, subd. (b).)

### B. Remand and Resentencing

While the remand was pending, each of the Appellants sought resentencing under section 1172.6 [previously section 1170.95], asserting that a complaint was filed against him that allowed the prosecution to proceed under a theory of murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime; that he was convicted of murder following a trial; and that he could not presently be convicted of murder because of changes to sections 188 or 189 made effective January 1, 2019.

In April 2021, the Honorable Thomas M. Reardon, who had presided over Appellants' 2013 trial, heard the section 1172.6 petitions of Anthony, Price and Campbell together with our directive on remand that the court exercise its discretion whether to strike the gun and prior serious felony enhancements.  The court heard Flowers's petition in August, having continued the hearing at his counsel's request.

As to the remand, the court declined to strike either the gang-related gun use enhancement or the prior serious felony conviction enhancements. Explaining its exercise of discretion, the court stated that the evidence "was

6

overwhelming" that Flowers was the shooter and Anthony, Price and Campbell were not. However, the latter was "not of any moment" because the gang-related gun use enhancement applied "vicariously" to each Appellant [with footnote if needed saying using "appellant" vs "petitioner" for clarity] where *any* principal in a gang offense personally and intentionally discharged a firearm proximately causing great bodily injury or death. (See § 12022.53, subds. (d), (e)(1)(A); § 186.22, subd. (b)). Further, this was not a situation, the court observed, in which these three co-defendants had been convicted of the enhancement "simply because they were from the same neighborhood as Mr. Flowers" or were "members of the same street gang." Rather, "It goes far beyond that: Their presence at the time of the shooting itself, the fact that more than one of them was armed at the time, the fact that it was obvious that substantial planning went on evidenced by the telephone communications that went on in the days leading up to the killing of Mr. Davis after the death of the other gentleman, Mr. Ngo . . . ." This was "more than just a technical violation" of the enhancement statute but was "a classic case for its applicability particularly in a murder case." For these reasons, the court declined to strike either the 25-year gang-related gun use enhancement as to Anthony, Campbell and Price or the five-year enhancements for prior serious felony convictions as to Price and Campbell. (§ 667, subd. (a)(1).) The court subsequently declined to strike the gang-related gun use enhancement as to Flowers as well.

Before ruling on the section 1172.6 petitions, Judge Reardon had appointed counsel to represent each of the Appellants. Counsel filed such

7

petitions on behalf of each of the four Appellants,[6] and a deputy district attorney filed a response for the People.

Counsel for the People conceded that under the change in the murder statutes, Price, Campbell and Flowers were entitled to relief from their convictions of second degree murder as to victims Ross and Perea, who were struck and killed during the high speed chase, because they were not the actual killers of those two victims and there was no evidence that they had intended to kill those victims. The court accepted the People's concessions, vacated the second degree murder convictions as to Price, Campbell and Flowers and resentenced them on the separate counts for vehicular evasion causing death.

Anthony did not seek relief from the second degree murder charges against him, and the People made no such concession as to him because, as the driver of the car, he was "therefore the direct perpetrator of the murders." Thus, he had not been convicted based on a theory of vicarious liability or aiding and abetting but on a finding that he acted with implied malice (conscious disregard for life) in causing Ross's and Perea's deaths.

As to Appellants' first degree murder convictions, the trial court denied relief without issuing an order to show cause or holding an evidentiary hearing. It recognized that at the first stage of a section 1172.6 hearing, where it had not issued an order to show cause and was determining whether petitioners had established a prima facie case sufficient to require it to issue one, it "should not engage . . . in fact finding, credibility determination, things like that, but—and so all sorts of things one might do at a broader

---

[6] Price filed a petition on his own behalf at about the same time counsel was appointed for him, which the trial court denied without prejudice to counsel filing a petition on his behalf, which that counsel then did.

evidentiary hearing" but that "if the merits of the petition[] are foreclosed as a matter of law by the—particularly the findings of the jury . . . , that would seem to be a different situation . . . ." "If the petition is legally foreclosed by the findings of the jury, the Court can resolve the petition on that basis."

Although the California Supreme Court issued its decision in *People v. Lewis*, *supra,* 11 Cal.5th 952 two months after the trial court made these observations, the trial court's comments accurately presaged the high court's holding in *Lewis* that, at the prima facie stage, trial courts should not reject petitioners' allegations on credibility grounds or engage in weighing of evidence or factfinding. (*Id.* at pp. 971-972.) The trial court also predicted *Lewis*'s holding that trial courts may consider documents in the record of conviction, such as the jury's findings of fact, where relevant to whether a petitioner has established a prima facie case, including whether the petitioner could not presently be convicted of first or second degree murder because of changes to the murder statute. (*Id.* at pp. 970-972 & fn. 6.)

The trial court did not weigh evidence, make credibility determinations or engage in factfinding of the kind *Lewis* held should not occur without an evidentiary hearing. It did, however, consider the record to determine whether the petitions were "foreclosed as a matter of law." Specifically, it consulted findings the jury necessarily made in issuing the true verdicts on the two special circumstances (murder to benefit a street gang and multiple murders)—that Appellants intended to kill Davis. The jury made "individualized determinations that these gentlemen had an actual intent to kill." Given these verdicts and the jury's finding "that each of these gentleman [*sic*] beyond a reasonable doubt had the intent to kill Mr. Davis," the court concluded, Appellants "will never be able to show" that they were

9

"entitled to relief" and "as a matter of law" could not "make a prima facie case."

The court in essence reiterated this analysis when ruling on the Flowers petition in August 2021, after the Supreme Court issued the *Lewis* decision. "The procedural posture is that there's a petition, I look to the facial sufficiency of the petition and I can take judicial notice of certain court records, which I believe includes the information and the verdict forms. But I'm not sure I can consider the evidence." The court concluded that the jury's finding beyond a reasonable doubt that each of the Appellants intended to kill Davis demonstrates "that the jury did not use [the] natural and probable consequences doctrine to get to murder."

### C. The Current Appeal

On appeal from the trial court's resentencing decisions, each Appellant raises challenges to a number of aspects of the trial court's rulings, and complicating matters further, joins in some of the challenges raised by the other Appellants. Most significantly, all Appellants challenge the trial court's denial of resentencing on their first degree murder convictions, claiming among other things that the jury's verdicts on the gang-related killing and multiple-murder special circumstances, and specifically, the findings reflected by those verdicts that Appellants intended to kill, do not demonstrate as a matter of law that they are guilty of first degree murder for the shooting death of Charles Davis.

Appellants contend that Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333) which amended the definition of "criminal street gang" while their current appeals were pending, requires that the jury's finding true the special circumstance for intentionally killing a victim while defendant was an active participant in a criminal street gang and in

10

furtherance of the activities of the gang (§ 190.2, subd. (a)(22)) must be stricken along with the sentence of life without parole imposed based on that finding.  For similar reasons, Appellants challenge the gang-related gun use enhancement that added a 25-year-to-life consecutive term to their sentences under section 12022.53, subdivision (h), on the grounds Assembly Bill 333 retroactively applies to heighten the showing required for certain elements of the enhancement and further contend it only applies to malice murder.

Price, joined by Campbell, contends the Vehicle Code section 2800.3 homicide convictions, which after striking three of the Appellants' second degree murder convictions the court resentenced them, must be vacated because they are based on the natural and probable consequences doctrine.

Appellants raise a plethora of other claimed abuses of discretion in the trial court's handling of the remand issues and claimed errors in its decision on the resentencing petitions, each of which we will address below.

## DISCUSSION

### A. Appellants' Claims of Error in Resentencing Under Section 1172.6

#### 1. The Trial Court Erred in Deciding at the Prima Facie Stage That the Intent to Kill Findings by the Jury Precluded Relief from the First Degree Murder Conviction As a Matter of Law and Remand Is Necessary.

Appellants challenge the trial court's denial, in connection with their resentencing petitions under section 1172.6, of their request that it vacate their convictions for the first degree murder of Davis.  They claim the court erred in placing dispositive weight on the jury's findings, in connection with the gang and multiple-murder special-circumstances verdicts, that Appellants each intended to kill Davis.  First, they argue the gang special circumstances findings can no longer be considered at all because of the

11

enactment of Assembly Bill 333, which narrowed the definitions of "criminal street gang" and "pattern of criminal gang activity" that are cross-referenced in the gang-related gun use special circumstance statute. (See §§ 190.2, subd. (a)(22) [special circumstance provision incorporating §186.22, subd. (f)]; Stats. 2021, ch. 699, § 3 [186.22 subds. (e)(1)&(2), (f), (g)].)

Second, Appellants also argue the jury's findings that each Appellant intended to kill Davis do not as a matter of law establish the elements of aiding and abetting first degree murder. Specifically, the intent to kill finding does not establish as a matter of law that the Appellants who did not shoot Davis "performed act[s] which 'aided or encouraged the commission of the murder.' " To determine whether there was such aiding and abetting, Appellants posit, the court would have to look at the evidence, and making findings based on evidence involves weighing and balancing that should not occur at the prima facie stage but only at an evidentiary hearing held after issuance of an order to show cause. (See *Lewis*, *supra*, 11 Cal.5th at pp. 971-972 ["In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 ["[T]he time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues"].)

The People disagree with both arguments. As to the first, they contend that Assembly Bill 333 did not effectively amend the gang-murder special circumstance because the latter was adopted by initiative and established limited criteria not met by Assembly Bill 333 for amendment by the

12

Legislature and, in the alternative, instruction under the prior version of the gang law was harmless beyond a reasonable doubt.

As to the second, they quote the jury verdicts finding each Appellant "*'intentionally killed* CHARLES DAVIS while the defendant was an active participant in NSO gang,[7] . . . and . . . the murder was carried out to further the activities of the criminal street gang.'" These findings, coupled with the instruction that to find the special circumstance true, it had to decide whether any defendant who was not the actual killer acted with intent to kill, the People argue, indicate the jury found defendants acted with express malice, that is, "'a deliberate intention to unlawfully take away the life of a fellow creature.'" The intent to kill findings in both the gang-murder special circumstance and the multiple-murder special circumstance, they further argue, "established, as a matter of law, that Appellants possessed the requisite malice to disqualify them from relief."

> ### a. Assembly Bill 333's Amendment of Section 186.22 Did Not Vitiate or Preclude Consideration of the Jury's Findings That Appellants Intended to Kill.

We agree with the People that Appellants' *first* argument lacks merit, albeit not for the reasons argued by the People. Rather, we reject appellants' assumption that an amendment—assuming it retroactively applied to the gang-murder special circumstance and requires reversal and remand of the verdict on the special circumstance—precludes the trial court from considering findings the jury expressly made in that verdict on a factual issue the amendment did not affect.

---

7 The initials "NSO" refer to a gang known as "North Side Oakland," which operated out of the northern part of Oakland, California and had a number of subsets, monikers and symbols. (*Anthony I, supra,* 32 Cal.App.5th at pp. 1106, 1126, 1132-1133.)

By way of background, the gang-murder special circumstance is set forth in section 190.2, subdivision (22), and has three basic elements. The defendant (1) must have " 'intentionally killed the victim,' " (2) while he was " 'an active participant in a criminal street gang, as defined in subdivision (f) of section 186.22,' " and (3) in order " 'to further the activities of the criminal street gang.' " (*People v. Montano* (2022) 80 Cal.App.5th 82, 109, 112.) Section 186.22, which is expressly incorporated in section 190.2, subdivision (22), was amended by Assembly Bill 333 in 2021, and the amendments took effect in January 2022, after the trial court ruled on Appellants' section 1172.6 petitions. (Stats. 2021, ch. 699, § 3.) The amendments revised the definition of "criminal street gang" and limited the meaning of the phrase "pattern of criminal gang activity,"[8] affecting the second and third elements of the gang-murder special circumstance. (See *ibid.*, amending § 186.22, subds. (e), (f).) It also added a definition of the phrase "to benefit, promote, further, or assist," affecting the third element of the special circumstance. (Stats. 2021, ch. 699, § 3, amending § 186.22, subd. (g).) However, the changes wrought by the amendments to section 186.22 did not affect the "intent to kill" element of the special circumstance on which the jury was instructed and found to be true as to all Appellants in this case.

As we shall explain, the other changes to section 186.22 may affect the viability of the special circumstance verdicts here. But they do not detract from the jury's express findings, in connection with both the gang-related-

---

[8] The phrase "pattern of criminal gang activity" is used in the definition of "criminal street gang," and thus the amendment that limited the meaning of that phrase implicated the same two elements as the change in the definition of "criminal street gang" itself.

14

murder special circumstance and the multiple-murder special circumstance, that each of the Appellants intended to kill Davis. Appellants cite no authority, nor are we aware of any, holding that a finding expressly made by a jury cannot be considered in a resentencing proceeding under section 1172.6 if the crime, enhancement or special circumstance regarding which it was made is invalidated for reasons wholly unrelated to that finding.[9]

### b. The Jury's Findings That Appellants Intended to Kill Davis Do Not As a Matter of Law Establish They Are Ineligible for Relief Under Section 1172.6 and Thus an Evidentiary Hearing Was Required.

Appellants' *second* argument, on the other hand, is viable, especially in view of a new case law development. Earlier this year, our high court addressed the effect of a gang special circumstances finding on harmless error analysis as applied to invalid theory error. (*In re Lopez* (2023) 14 Cal.5th 562.) The court reviewed a decision reversing a trial court's grant of habeas corpus to a petitioner who had been convicted of first degree murder. (*Id.* at p. 567.) As in this case, the jury had been instructed on both valid (premeditated murder and aiding and abetting premeditated murder) and invalid (natural and probable consequences) theories. (*Id.* at pp. 576-578.) The appellate court had held the jury's true finding on the gang-murder special circumstance rendered the instruction on the natural and probable consequences theory harmless beyond a reasonable doubt. (*Id.* at pp. 567-568.)

---

[9] While our high court has not addressed the precise issue before us, it has rejected the suggestion that petitioners in resentencing proceedings under section 1172.6 are free to relitigate adverse factual findings previously made by the jury under a valid instruction. (See *People v. Strong* (2022) 13 Cal.5th 698, 714-715.)

The Supreme Court reversed, holding the jury's gang-killing special-circumstance verdict finding of "intent to kill" did not "necessarily establish all of the elements of directly aiding and abetting first degree murder.  Thus, it does not *in and of itself* show the jury made the necessary findings for a valid theory." (*In re Lopez, supra,* 14 Cal.5th at p. 588, italics added; see also *People v. Pacheco* (2022) 76 Cal.App.5th 118, 127-128, review granted May 18, 2022, S274102.)[10]  However, the court further opined that this did not "end the harmlessness inquiry" because " 'the reviewing court [was] not limited to a review of the verdict itself.' " (*In re Lopez,* at p. 588.)  It could also consider the evidence admitted at trial.  If it determined beyond a reasonable doubt, based on the jury's actual verdict and the evidence at trial, that any rational juror would have made the additional findings (premeditation and aiding and abetting), the error would be harmless because natural and probable consequences instruction "made no difference." (*Id.* at p. 589.)  The court remanded the case to the Court of Appeal to reconsider the harmless error issue.  (*Id.* at p. 590.)

---

[10] "Aiders and abettors may still be convicted of first degree premeditated murder based on direct aiding and abetting principles. [Citation.]  Under those principles, the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission. [Citation.]  Because the mental state component—consisting of intent and knowledge—extends to the entire crime, it preserves the distinction between assisting the predicate crime of second degree murder and assisting the greater offense of first degree premeditated murder.  [Citation.]  An aider and abettor who knowingly and intentionally assists a confederate to kill someone could be found to have acted willfully, deliberately, and with premeditation, having formed his own culpable intent.  Such an aider and abettor, then, acts with the mens rea required for first degree murder." (*Chiu, supra,* 59 Cal.4th at pp. 166-167.)

16

The *In re Lopez* court's holdings—first, that a jury's gang-murder special circumstance finding does "not *in and of itself* show the jury made the necessary findings" to support conviction for aiding and abetting first degree murder; and second, that the appellate court was required look beyond the verdict to the evidence at trial (see *In re Lopez, supra,* 14 Cal.5th at pp. 588-589, italics added)—have a bearing here, even though the procedural aspects of resentencing are different from harmless error analysis on habeas (or direct) review of a conviction.[11] An appellate court's assessment on direct appeal of whether an instruction on a now invalid theory was harmless beyond a reasonable doubt is substantively similar to the question a trial court faces in a section 1172.6 hearing whether such instruction made no difference in the outcome of the case. The court's prescription for how to answer that question in the first context sheds light on the second as well.

*In re Lopez*'s holding that a finding of intent to kill is not alone sufficient to establish Lopez was guilty of first degree murder leads us to conclude that the trial court erred in ruling that the special circumstance findings of intent to kill rendered Appellants ineligible for section 1172.6 relief as a matter of law. In other words, the verdicts alone do not conclusively establish that Appellants could be convicted of first degree murder under a valid murder theory such as premeditated murder or aiding and abetting or conspiracy to commit premeditated murder.

---

[11] Currently pending before the court is a case with a procedural posture closer to this one, *People v. Curiel*, review granted December 14, 2021, S272238, which presents the question whether a jury's true finding on a gang-murder special circumstance (§ 190.2, subd. (a)(22)) precludes a petitioner from making a prima facie showing of eligibility for resentencing under section 1172.6. The case has been fully briefed, but oral argument has not been scheduled.

*In re Lopez*'s further holding that resort must be had to the evidence at trial to answer that question also implicates the procedural error Appellants claim the trial court committed. At the prima facie stage of a section 1172.6 proceeding, a trial court may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra,* 11 Cal.5th at pp. 971-972.) Thus, more is required for the trial court to conclude that the jury's finding that Appellants intended to kill shows they committed first degree murder. The court must consider not only the instructions and the verdicts but also the evidence. Unless the undisputed evidence at trial is conclusive on the issue, the trial court must conduct a hearing at which the prosecution will bear the burden of proof and new evidence may be presented by either side. (*Ibid.*; § 1172.6, subd. (d)(3).)

The trial court here appears to have ruled that, as a matter of law, the special circumstance findings of intent to kill precluded appellants from eligibility for relief under section 1172.6. Under *In re Lopez*, however, more is required, namely, evidence establishing beyond a reasonable doubt that the appellants premeditated and deliberated in deciding to kill a rival gang member or relative of such member whom they might come upon as they entered the rival gang's territory, and evidence establishing, beyond a reasonable doubt, that the Appellants who did not shoot the victim aided and abetted the Appellant who did. We do not mean to suggest that such evidence is necessarily lacking. However, for the trial court to assess whether the weight of the evidence supporting the elements of aiding and abetting first degree murder is so strong as to support a conclusion that Appellants are guilty of first degree murder beyond a reasonable doubt, the statute requires it to issue an order to show cause and conduct an

18

evidentiary hearing and allow either party to present additional evidence. (§ 1172.6, subds. (c), (d)(3).)

### c. Contrary to the People's Alternative Argument, Our Holding that the *Chiu* Error Was Harmless Beyond a Reasonable Doubt Is Not Law of the Case That Precluded Appellants from Establishing a Prima Facie Showing.

The People argue, in the alternative, that, although the trial court did not rely on in it, our determination that the *Chiu* error was harmless beyond a reasonable doubt was "a proper basis for denying relief at the prima facie stage." The People contend that our decision falls within the law of the case doctrine and must therefore be adhered to by the trial court and this court in proceedings subsequent to it.

We are not persuaded. As the People concede, the doctrine applies "when a court decides a *legal* issue" and binds the courts going forward in the same case " 'as to questions of *law* (though *not as to questions of fact*).' " (Italics added.) "Under the law of the case doctrine, when an appellate court ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ." ' [Citation.] Absent an applicable exception, the doctrine 'requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong.' [Citation.] As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact. [Citation.]" (*People v. Barragan* (2004) 32 Cal.4th 236, 246.)[12]

---

[12] *People v. Barragan* states that a court's determination that the evidence is insufficient to justify a finding or judgment is necessarily a decision on a question of law. But sufficiency of the evidence analysis is

19

The People assume, without discussion, that a decision that error is harmless is necessarily a legal, not factual determination. Failing to discuss that assumption, they likewise provide no authority supporting it.

It seems to us that harmless error analysis is not always a purely legal issue and indeed, more often than not, involves a review of the trial evidence and the inferences that logically flow from it. In determining whether error is harmless, appellate courts typically assess the weight of the evidence. (*People v. Aranda* (2012) 55 Cal.4th 342, 367 ["[T]he harmless error inquiry for the erroneous omission of instruction on one or more elements of a crime focuses *primarily* on the weight of the evidence adduced at trial"]; *People v. Aledamat* (2019) 8 Cal.5th 1, 17 (conc. & dis. opn. of Cuellar, J.) ["[C]ourts performing harmless error review . . . must *weigh* how an error affected the proceedings without displacing the jury as finder of fact," italics added]; see *People v. Doolin* (2009) 45 Cal.4th 390, 449 [any error in admitting population frequency statistics for DNA was "harmless in light of the other *weighty* evidence of defendant's guilt," italics added]; *People v. Villasenor* (2015) 242 Cal.App.4th 42, 70 [" '*confessions* carry "extreme *probative weight*," [and] the admission of an unlawfully obtained *confession* rarely is harmless error,' " second italics added].) Harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) entails " 'examining the entire cause, including the evidence, and considering all relevant circumstances' " to determine whether, beyond a reasonable doubt, the error did not contribute to the verdict. (*In re Ferrell* (2023) 14 Cal.5th 593, 602.) " '[I]f " '[n]o reasonable jury' " would have found in favor of the defendant on

distinct from harmless error analysis, and even determinations of sufficiency of the evidence are not treated as law of the case in all instances. (See, e.g., *People v. Cooper* (2007) 149 Cal.App.4th 500, 525-526.)

the' valid theory, 'given the jury's actual verdict and the state of the evidence, the error may be found harmless beyond a reasonable doubt.' (*In re Lopez* [, *supra*, 14 Cal.5th at p. 580], quoting *Aledamat*, at p. 15; accord, *Neder v. United States* (1999) 527 U.S. 1, 19 ['[A] court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element'].)" ' " (*In re Ferrell* at p. 603.)

In analyzing the harmless error question on direct appeal in this case, we did not reach a conclusion as a matter of law based on the instructions and verdict alone. Rather, we assessed and considered the weight of the evidence in concluding beyond a reasonable doubt that the jury's verdicts of first degree murder were based on a theory of conspiracy to commit murder or aiding and abetting first degree murder rather than a theory of natural and probable consequences. We observed that, given the evidence, there could be no question that "Flowers, who the evidence plainly indicated was the shooter,"[13] acted with intent to kill when he "fir[ed] a barrage of bullets at Charles."[14] (*Anthony I, supra,* 32 Cal.App.5th at p. 1146.) Further, we explained that "[t]he jury's findings that Anthony, Price and Campbell, none

---

[13] An eyewitness to the shooting identified Flowers as the shooter, told police he was wearing a "Rastafarian" hat with distinctive coloring and identified the same hat at the police station, after police found it in Anthony's Cadillac. (*Anthony I, supra,* 32 Cal.App.5th at pp. 1109-1110, 1112.) Non-blood DNA from the hat was compatible with Flowers and incompatible with the other Appellants.

[14] The forensic pathologist who performed the autopsy testified Charles's death was caused by "multiple gunshot wounds from head to foot," "police recovered 17 shell casings of a caliber that was common for an AK-47 assault rifle," and an eyewitness who went to help the victim of the shooting testified that the victim's head had many gunshot wounds and the face was "blown off." (*Anthony I, supra,* 32 Cal.App.5th at pp. 1110-1111.)

of whom was proven to be the actual killer, intended to kill Charles strongly suggest[ed] that its first degree murder verdicts for each of them were based on its conclusion that each aided and abetted or conspired to *murder* Charles, not merely to assault him." (*Id.* at p. 1145.) We rejected the "[d]efendants' argument that the jury's 'intent to kill' finding was consistent with second degree murder," because it was contrary to the "overwhelming evidence." (*Id.* at p. 1146.) Specifically, we opined that "[e]very aspect of [Appellants'] conduct indicates they acted with willfullness, deliberation and premeditation to murder Charles [Davis]." (*Id.* at p. 1145.) The circumstances indicated "they were intent upon murder when they drove together into Berkeley, and were intent upon murdering Charles specifically when they came upon him because of his familial relationship to reputed Berkeley gang member Jermaine [Davis]. Their actions show[ed] planning, motive and a preexisting intent to kill,[15] rather than unconsidered, impulsive actions. Accordingly, the prosecutor emphasized a first degree murder theory in his closing argument to the jury, such as when he asserted,

---

[15] The murder was carried out three weeks after the murder of Ngo Nguyen, who was Anthony's best friend and a fellow gang member, and the attempted murders of Ngo's brother and of Anthony himself. (*Anthony I, supra,* 32 Cal.App.5th at pp. 1114-1115, 1126-1127, 1142.) Anthony told police shortly after Ngo's murder that he suspected the perpetrators were members of a rival gang in Berkeley. (*Ibid.*) When Anthony and Price were arrested on the day of the murder after their cohorts had fled the scene (see *id.* at p. 1112) , police found several photographs of Ngo and a funeral flyer for Ngo with photos of him displaying gang signs in Anthony's car. (*Id.* at pp. 1113, 1134.) During the period between the two killings, Anthony, Price and Flowers, whose cell phones were found in Anthony's car and on Price's person when Anthony and Price were apprehended, were in almost constant contact with each other, calling and texting. (*Id.* at pp. 1112-1113, 1141-1142, 1146.)

'This was an ambush and an execution.  Plain and simple.' " (*Id*. at p. 1145; see *id*. at p. 1143.)  "[I]t would have been nonsensical," we opined, "for the jury to conclude that, while Flowers acted with premeditation and deliberation in committing the murder, he was aided and abetted, or in a conspiracy, with three defendants who did not form the intent to kill until the murder occurred.  The jury would have had to conclude that Flowers concealed his own murderous intent from Anthony, Price and Campbell as they drove into the heart of the Berkeley gang's territory until the moment Flowers killed Charles, and that each of the three decided on the spur of the moment to aid and abet, or conspire, with Flowers to murder Charles.  This despite Flowers's near constant cell phone communications with both Anthony and Price in the days leading up to the murder, and defendants' travel together to the rival Berkeley gang's territory heavily armed[16] and with masks." (*Id*. at p. 1146; see *id*. at pp. 1109, 1112-1113, 1141.)

In short, our harmless error analysis and our conclusion that the *Chiu* error was harmless beyond a reasonable doubt because rational jurors could not have found intent to kill on the part of defendants without finding premeditated murder was heavily fact- and evidence-based.  The People have failed to persuade us that our ruling falls within the law of the case doctrine.

Additionally, the requirement under section 1172.6 that the court must allow the parties to present additional evidence is itself a reason that law of the case does not apply here.  What the Legislature intended trial judges would decide in holding evidentiary hearings under section 1172.6 is a review

---

[16]  Police found a loaded semiautomatic pistol in plain sight on the floorboard of the driver's seat of Anthony's Cadillac and two semiautomatic assault rifles on the right front passenger-side floorboard, one of which was loaded.  (*Anthony I, supra,* 32 Cal.App.5th at p. 1113.)

of a decidedly factual nature. "The question is whether the petitioner committed murder under a still-valid theory, and that is a factual question. The Legislature made this clear by explicitly holding the People to the beyond a reasonable doubt evidentiary standard and by permitting the parties to submit new or additional evidence at the hearing on eligibility. ( § 1170.95, subd. (d)(3).)" (*People v. Clements* (2022) 75 Cal.App.5th 276, 294 [rejecting argument that trial court must decide only whether evidence is sufficient to support verdict].) Under *In re Lopez*, the trial court on remand will need to engage in an assessment of the evidence that will almost certainly involve assessments of the weight and credibility of evidence and possibly other indicia bearing on whether Appellants "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§1172.6, subd. (a)(3).) The People, who will bear the burden of proof at the evidentiary hearing, may present new or additional evidence, as may the appellants. (*Id.*, subd. (d)(3).)

"[T]he law-of-the-case doctrine governs only the *principles of law* laid down by an appellate court, as applicable to a retrial of fact, and *it controls the outcome on retrial only to the extent the evidence is substantially the same.*" (*People v. Boyer* (2006) 38 Cal.4th 412, 442, second italics added.) Because the parties may present new evidence on remand, it is not clear that the evidence will be substantially the same. As the court stated in *Boyer*, "Our discussion of suppression issues in [*People v. Boyer* (1989) 48 Cal.3d 247 (*Boyer I*)] was based on the record then before us. Even if the law-of-the-case doctrine makes *Boyer I* conclusive on the legal principles there established, the doctrine did not foreclose new evidence on retrial indicating that the dispositive facts are materially different than those we addressed." (*Id.* at p. 443.) The same is true here as to the section 1172.6 proceeding.

24

For the foregoing reasons, we remand the section 1172.6 proceeding to the trial court with directions to issue an order to show cause and hold an evidentiary hearing consistent with the requirements of that statute.

## B. Effect of Amendment of the Gang Statute on Gang-Related Gun Enhancement and Gang Special-Circumstance Verdicts

The jury found true as to all Appellants a gang-related gun enhancement that applies to principals in the commission of a murder in which any principal personally and intentionally discharged a firearm and proximately caused great bodily injury or death, where the offense was for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members. (§§ 12022.53 subds. (a)(1), (d), (e)(1), former § 186.22, subd. (b)(1); see Stats. 2011, ch. 361, §§ 1, 2.)

Section 12022.53, subdivision (d), provides that, "[n]otwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury . . . or death, to a person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." Section 12022.53, subdivision (e)(1), states that, "[t]he enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved: [¶] (A) The person violated subdivision (b) of Section 186.22 [person convicted of felony for the benefit of, at the direction of, or in association with a criminal street gang with specific intent to promote, further, or assist in criminal conduct by gang members]. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d) [in commission of a felony, personally uses a firearm, personally and

25

intentionally discharges a firearm, or personally uses and intentionally discharges a firearm proximately causing great bodily injury or death]." The enhanced punishment imposed under section 12022.53, subdivision (d) is "an additional and consecutive term of imprisonment in the state prison for 25 years to life." (§ 12022.53, subd. (d).)

As to each Appellant, the jury also found true the allegations supporting two special circumstances set forth in section 190.2, one of which was that he "intentionally killed the victim while [he] was an active participant in a criminal street gang, as defined in subdivision (f) of Section 188.22, and that the murder was carried out to further the activities of the criminal street gang." (§ 190.2, subd. (a)(22).) Section 190.2, subdivision (a)(2), prescribes a penalty of "death or imprisonment in the state prison for life without the possibility of parole if" the jury finds that special circumstance true.

Appellants contend that Assembly Bill 333, which amended the statute defining certain terms that are incorporated into these sections, applies retroactively to their cases and requires a reversal and remand for retrial on the enhancement and special circumstance.

As the People concede, the amendments Assembly Bill 333 made apply retroactively to the gang-related gun use enhancement under section 12022.53, subdivision (e), because the legislation is ameliorative and the judgments against Appellants were not final when the new legislation took effect. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206-1207 (*Tran*) [changes to gang enhancement under Assembly Bill 333 are retroactive to non-final cases]; *People v. Lee* (2022) 81 Cal.App.5th 232, 237 (*Lee*), review granted Oct. 19, 2022, S275449; *People v. E.H.* (2022) 75 Cal.App.5th 467, 478; *People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344.) The People also

26

acknowledge that the amendments in substance impose a higher threshold of proof for elements of the gang participation gun enhancement and the gang special circumstance.

However, the People argue that the amendments cannot be applied to the gang special circumstance because the special circumstance statute was adopted through an initiative measure that provided it could only be amended by the Legislature with a two-thirds vote of the Senate and Assembly. Further, the People argue that any error in instructing the jury on the gang-related gun-use enhancement as it existed before the adoption of Assembly Bill 333 was harmless beyond a reasonable doubt. To analyze these issues, some background is required.

The amendments wrought by Assembly Bill 333 impose additional elements on both the gang-related gun enhancement and the gang-murder special circumstance that were beyond those required at the time of Appellants' trial. Relevant here are the following changes. "First, [Assembly Bill 333] narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.)[17] Second, whereas section 186.22, former subdivision (f), required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order

_____

[17] Previously, that definition referred to "an *ongoing organization, association or group* of three or more persons . . . ." (See Legis. Counsel's Dig., 2021 California Assembly Bill 333, Stats.2021, ch. 699, Summary Dig., p. 2, italics added.) The current definition is "*an ongoing, organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.)

27

to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.)  Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity" by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within [three years of the prior offense[18] and] within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by *two or more gang 'members,' as opposed to just 'persons'*; (3) the offenses *commonly benefitted* a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones *other than the currently charged offense*.  (§ 186.22, subd. (e)(1), (2).)[19]  Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any *'common benefit'* be *'more than reputational.'* (§ 186.22, subd. (g).)"[20]  (*Tran, supra,* 13 Cal.5th at p. 1206, italics added in part.)  "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or

---

[18] See § 186.22, subd. (e)(1).

[19]  The bill also "remove[d] looting, felony vandalism, and specified personal identity fraud violations from the crimes that define a pattern of criminal gang activity."  (Stats. 2021, ch. 699 [second paragraph of Legis. Counsel's Dig.].)

[20]  An additional change that is not the subject of Appellants' arguments is that "Assembly Bill 333 added section 1109, which requires, if requested by the defendant, a gang enhancement charge to be tried separately from all other counts that do not otherwise require gang evidence as an element of the crime.  If the proceedings are bifurcated, the truth of the gang enhancement may be determined only after a trier of fact finds the defendant guilty of the underlying offense."  (*Tran, supra*, 13 Cal.5th at p. 1206.)

silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

As to the gang-related gun enhancement imposed in this case under section 12022.53, subdivision (e), on Appellants who did not personally discharge the firearm, the amendments affect the element requiring that the person violated subdivision (b) of section 186.22. A person violates that subdivision if he or she is "convicted of a felony for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." (§ 186.22, subd. (b).) Also implicated in the enhancement are (1) the changes to the definitions of "criminal street gang" and "pattern of criminal gang activity." In order for NSO to have met the definition of a criminal street gang, the gang had to be organized, its members had to have engaged in criminal gang activity collectively rather than individually, the last predicate offense had to occur within three years of 2009, and all predicate offenses had to be among those listed in the amended statute, have been committed by two or more members and have commonly benefited the gang in a way that was more than reputational. (§ 186.22, subds. (f), (e)(1).)

The gang-murder special circumstance, section 190.2, subdivision (a)(22), is also affected by Assembly Bill 333 because, as we have indicated, it requires that Appellants have intentionally killed the victim while they were active participants in a criminal street gang. Section 190.2, subdivision (a)(22), incorporates by reference the definition of criminal street gang in subdivision (f) of section 186.22, which has been amended to require collective activity and a proximity of criminal offenses. A "criminal street gang" in section 186.22, subdivision (f), has long been defined as having members who engage in a "pattern of criminal gang activity," as that phrase

29

is defined in section 186.22, subdivision (e).  Assembly Bill 333 amended section 186.22 to narrow the meaning of both of those phrases.  And the requirement of section 190.2 that the murder have been carried out to "*further* the activities of the criminal street gang" is affected by the addition to section 186.22 of a definition of that phrase to require a common benefit that is "more than reputational," such as "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g).)

### 1.  Assembly Bill 333 Validly Amended Proposition 21.

The People's argument that Assembly Bill 333 amended the gang-murder special circumstance in a way that was not permitted by Proposition 21, the initiative measure that enacted the gang-murder special circumstance, has been considered by panels in two other districts.  A panel in the Second District held the bill did not violate the constitutional prohibition on legislative amendment of a statute adopted by initiative.  (See *Lee, supra,* 81 Cal.App.5th at pp. 240-245.)  A panel in the Fifth District followed *Lee* in holding the gang conspiracy statute, which like the gang-murder special circumstance was also enacted by Proposition 21, was not unconstitutionally amended by Assembly Bill 333.  (*People v. Lopez* (2022) 82 Cal.App.5th 1, 14-25 (*Lopez*), review den. Nov. 9, 2022.)  On the other hand, a decision by a different panel of the Fifth Circuit held that Assembly Bill 333 did not validly amend the gang-murder special circumstance and that the changes to the definitions of "criminal street gang" and "pattern of gang criminal activity" in section 186.22, subdivisions (e) and (f), cannot be applied (retroactively or prospectively) to the special circumstance.  (*People v. Rojas* (2022) 80 Cal.App.5th 542, 553-558 (*Rojas*), review granted Oct. 19, 2022, S275835.)  Our high court granted review in *Rojas* to decide whether

30

Assembly Bill 333 unconstitutionally amended Proposition 21, if applied to the gang-murder special circumstance.  (518 P.3d 278 [2022 Cal. LEXIS 6346].)  On the same day, it granted review in *Lee* and deferred further action pending its disposition of *Rojas*.[21]  (518 P.3d 279 [2022 Cal. LEXIS 6359].)  The court denied review in *Lopez*.

As explained by Justice Pena of the Fifth District in *Lopez*, "Section 190[, subdivision] (a)(22) was enacted as part of Proposition 21, an initiative measure approved by the electorate in the March 2000 primary election.  [Citation.]  Section 190.2[, subdivision] (a)(22) makes first degree murder a capital crime if '[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, *as defined in subdivision (f) of Section 186.22*, and the murder was carried out to further the activities of the criminal street gang.' " (*Lopez, supra,* 82 Cal.App.5th at p. 14.)

In *Lee, supra,* 81 Cal.App.5th 232, Division Four of the Second District concluded Assembly Bill 333 did not unconstitutionally amend section 190.2, subdivision (a)(22).  (*Lee,* at p. 245.)  Further, it held " 'that the term "criminal street gang" as incorporated in the gang-murder special-circumstance statute was "intended to conform at all times" and "remain permanently parallel" to section 186.22.' " (*Lopez, supra,* 82 Cal.App.5th at p. 15 [discussing *Lee*].)  In *Lopez*, Justice Pena, joined by Justices Franson and Smith, followed *Lee* and added to its analysis in holding that the criminal street gang conspiracy provision (section 182.5), was not unconstitutionally amended by Assembly Bill 333.  (*Lopez,* at pp. 14-25.)

---

[21] The court also granted and deferred action in *Lee* on an issue not raised here pending disposition of *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022, S274743.

The analyses in these cases have two key components. First, the courts conclude that section 186.22 was not a product of Proposition 21, at least not the provisions relevant here. Rather, it was enacted in 1987 as part of the Street Terrorism Enforcement and Prevention or STEP Act. (*Lee, supra,* 81 Cal.App.5th at p. 242; *Lopez, supra,* 82 Cal.App.5th at p. 16.) By the time Proposition 21 was adopted some nine years later, section 186.22 had been amended many times. (*Lopez*, at pp. 16-17.) Proposition 21 reenacted section 186.22 without significant substantive change to the definitions of "pattern of criminal gang activity" or "criminal street gang" previously set forth in section 186.22. (*Lopez*, at pp. 19-21.)

As Justice Pena points out, " 'the parts of an amended statute that are copied without change are considered to have been part of the law all along and thus cannot be considered to be among the initiative's statutory provisions.' " (*Lopez, supra,* 82 Cal.App.5th at pp. 19-21, quoting *People v. Superior Court* (*Ferraro*) (2020 51 Cal.App.5th 896, 915 and citing *County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 209-210 and Gov. Code, § 9605 [portions of statute not altered when statute is amended are not considered as having been repealed and reenacted but as having been the law from the time when they were enacted; *new* provisions are considered to be enacted at time of amendment].) The changes wrought by Assembly Bill 333 affected provisions that either pre-existed Proposition 21, and therefore were the law "all along," or that were added by legislative amendments after Proposition 21 was enacted. (*Lopez,* at pp. 16-17, 20-21.) As such, the Legislature was free to amend those provisions because they are not considered to be part of the initiative measure. (*County of San Diego*, at pp. 209-210.)

32

Of course, the special circumstance provision, section 190.2, subdivision (a)(22), and the gang conspiracy section, *were* enacted by Assembly Bill 333. The courts in both *Lee* and *Lopez* addressed whether Proposition 21's references to section 186.22 in the special circumstance and gang conspiracy provisions reflected an intent to incorporate that section as of a specific point in time or to incorporate it as amended by the Legislature from time to time. In a somewhat simplified nutshell (we will not repeat their entire analyses here), both the *Lee* and *Lopez* courts explained that under *In re Jovan B.* (1993) 6 Cal.4th 801 and its progeny, the high court rejected a formulaic approach and held that "where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be . . . legislative intent . . . ' " (*Jovan B.*, at p. 816; accord, *Lopez*, *supra*, 82 Cal.App.5th at p. 23; *Lee*, *supra*, 81 Cal.App.5th at pp. 240-241.)

The courts in *Lee* and *Lopez* began by considering the language of the initiative provisions that incorporated section 186.22[22] and then construed

_____

[22] Section 182.5 provides, "Notwithstanding subdivisions (a) or (b) of Section 182, any person who actively participates in any *criminal street gang, as defined in subdivision (f) of Section 186.22,* with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, as defined in subdivision (e) of Section 186.22, and who willfully promotes, furthers, assists, or benefits from any felonious criminal conduct by members of that gang is guilty of conspiracy to commit that felony and may be punished as specified in subdivision (a) of Section 182." (Italics added.)

Section 190.2 provides in relevant part, "The penalty for a defendant who is found guilty of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true: . . . (22) The defendant intentionally killed the victim while the defendant was an active participant in a *criminal street gang, as defined in*

33

those sections in the context of the initiative measure as a whole.  (*Lopez*, *supra*, 82 Cal.App.5th at pp. 23-25; *Lee*, *supra*, 81 Cal.App.5th at pp. 241-242.)

Neither the incorporation language in the gang-murder special-circumstance provision, section 190.2, subdivision (a)(22), adopted by section 11 of Proposition 21 (*Lee*, *supra*, 81 Cal.App.5th at p. 241) and in section 182.5, nor that in the gang conspiracy provision at issue in *Lopez* (*Lopez*, *supra*, 82 Cal.App.5th at pp. 23-24) contained any indication of a time-specific intent—that is, language regarding whether the Legislature intended to incorporate section 186.22 as a  statute with the terms it contained frozen in time as they were when Proposition 21 was enacted.  (See *Lee*, at p. 243; *Lopez*, at p. 23 ["The text of section 182.5 is not immediately helpful because its incorporation by reference of section 186.22, subdivisions (e) and (f) does not alone establish a time-specific intent"].)

Looking more broadly at Proposition 21 as a whole, the courts observed that other provisions of that initiative measure, by contrast, contained a clear indication of intent to restrict reference to the terms of other statutes in a time-specific way.  (*Lee, supra*, 81 Cal.App.5th at p. 243; *Lopez, supra*, 82 Cal.App.5th at p. 24.)[23]  "By using time-specific language in [those

---

*subdivision (f) of Section 186.2*, and the murder was carried out to further the activities of the criminal street gang."  (Italics added.)

[23] Section 14 of Proposition 21 "added section 667.1 to the Penal Code to read:  'Notwithstanding subdivision (h) of Section 667, for all offenses committed on or after the effective date of this act, *all references to existing statutes in subdivisions (c) to (g), inclusive, of Section 667, are to those statutes as they existed on the effective date of this act*, including amendments made to those statutes by this act.' "  (*Lopez, supra*, 82 Cal.App.5th at p. 24, italics added; *Lee*, *supra*, 81 Cal.App.5th at p. 243.)  Identical language was used in section 16 of the initiative measure, which added section 1170.125 to the Penal Code.  (*Lopez,* at p.24; *Lee* at p. 243.)

provisions of Proposition 21], the voters 'change[d] the lock-in' date for determining the existence of qualifying offenses (such as violent or serious felonies) under the Three Strikes Law.' " (*Lopez*, at p. 24.) From this, it was apparent that, "In enacting Proposition 21, the electorate clearly knew how to express the intent to freeze a statutory definition." (*Lee* at pp. 242-243.) "Given the express time-specific incorporations in [other sections] of Proposition 21, we may safely assume that had the voters also intended section 11 of Proposition 21 to make a time-specific incorporation of section 186.22, subdivision (f), they would 'have said so in readily understood terms.' [Citation.] But there is no such language. There is simply no basis to believe that the voters understood they were precluding future amendments of subdivision (f) of section 186.22 as referred to in the gang-murder special circumstance, while permitting such future amendments for section 186.22 itself." (*Lee*, at p. 243; accord, *Lopez*, at pp. 24-25.)

We find *Lee* and *Lopez* persuasive. We cannot say the same about *Rojas*. In that case, Justice Poochigan, in an opinion for two justices that drew a dissent from a third, focused on two broad propositions: "A legislative enactment amends an initiative if it 'prohibits what the initiative authorizes, or authorizes what the initiative prohibits' " and "A legislative enactment also amends an initiative 'by taking away from it.' " (*Rojas*, *supra*, 80 Cal.App.5th at p. 553.) Reasoning that Assembly Bill 333 had the effect of reducing the scope of murders punishable under section 11 of Proposition 21 (§ 190.2, subdivision (a)(22))—by requiring collective and not just individual engagement in a pattern of racketeering activity, eliminating looting and felony vandalism from the list of crimes contained in section 186.22 and requiring that the last offense have been committed within three years of the current offense—" 'takes away' from the scope of conduct that Proposition 21

35

made punishable under section 190.2" and "is an amendment" that failed to meet the two thirds vote requirement of that proposition. (*Rojas,* at pp. 554-555.)

The *Rojas* majority failed to grapple with the observation in *Lee* and *Lopez* that section 186.22, to which changes were later made by Assembly Bill 333, was not initially adopted by voters in Proposition 21 and that the changes made by Assembly Bill 333 to the definitions of "criminal street gang" and "pattern of criminal gang activity" affected only provisions that predated Proposition 21 and were not changed by the proposition. (See *Rojas*, *supra*, 80 Cal.App.5th at pp. 554-555.) Further, the *Rojas* majority makes no effort to ascertain the intent behind the voters' cross-reference to section 186.22 in the gang-murder special circumstance (§ 190.2), specifically, whether voters intended that the incorporation of section 186.22 would be to the statute as frozen in time when Proposition 21 was enacted.

*Rojas* also rejects the reasoning of *People v. Superior Court* (*Gooden*) (2019) 42 Cal.App.5th 270, 281 that a ballot measure establishing the punishment for a crime is not invalidly amended by legislation that changes the elements of the crime. (*Rojas*, 80 Cal.App.5th at pp. 555-557.) *Gooden* held Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which changed the mens rea requirements for the offense of murder, was not an invalid amendment of Proposition 7, a voter initiative that increased the punishments for murder. (*Gooden*, at pp. 278, 280-286.) *Rojas* disagreed that Senate Bill 1437, which changed some of the *elements* of murder, addressed a subject distinct from an initiative that increased the *punishments* for murder. (*Rojas*, at pp. 555-557.) *Gooden* and its progeny have been followed by every court that has issued a published opinion on

36

whether Senate Bill 1437 invalidly amended Proposition 7.[24] *Lee* found *Gooden*'s analysis pertinent to the issue here. (See *Lee, supra,* 81 Cal.App.5th at p. 244.) We agree and adopt its reasoning.

Finally, the interpretation adopted by *Rojas* would mean the phrases "criminal street gang" and "pattern of criminal gang activity" each have multiple meanings, one for purposes of the special circumstance, and another for purposes of the gang-related gun enhancement in section 12022.53, subdivision (e)(1), the offense of active participation in a criminal street gang in section 186.22, subdivision (a), the offense of felony committed for the benefit of a gang in section 186.22, subdivision (b), and the public offenses committed for the benefit of a criminal street gang in section 186.22, subdivision (d). Not only would this result in confusion for any jury faced with both a gang-murder special circumstances and gang-related offenses and enhancements, but it could result in defendants being "found not to qualify for the lesser gang sentence enhancements, but nonetheless found to qualify for capital punishment." (*Lee, supra*, 81 Cal.App.5th at p. 242 & fn. 36.) As stated in *Lee,* "[i]t is difficult to discern a rational reason for such an anomalous choice, and we find no basis to conclude the electorate made it." (*Id*. at p. 242.)

---

[24] This includes other Fourth District panels (*People v. Cruz* (2020) 46 Cal.App.5th 740, 747; *People v. Prado* (2020) 49 Cal.App.5th 480, 492; *People v. Solis* (2020) 46 Cal.App.5th 762, 775-780; *People v. Johns* (2020) 50 Cal.App.5th 46,60-66; *People v. Lippert* (2019) 53 Cal.App.5th 304, 312-314); and panels from the Second (*People v. Bucio* (2020) 48 Cal.App.5th 300, 308-312; *People v. Smith* (2020) 49 Cal.App.5th 85, 91-92; *People v. Lopez* (2020) 51 Cal.App.5th 589, 596-603); Third (*People v. Superior Court (Ferraro)* (2020) 51 Cal.App.5th 896, 908-914; *People v. Lombardo* (2020) 54 Cal.App.5th 553, 560); Fifth (*People v. Nash* (2020) 52 Cal.App.5th 1041, 1053, 1058-1067); and Sixth (*People v. Alaybue* (2020) 51 Cal.App.5th 207, 210, 214-217).

In short, like the courts in *Lee* and *Lopez*, we reject the People's argument that Assembly Bill 333's changes to the definitions of "criminal street gang" and "pattern of criminal gang activity" are invalid amendments of Proposition 21. Therefore, the gang-murder special-circumstance findings as to Appellants cannot be affirmed on that basis.

## 2. The Instructions on the Gang-Related Gun Enhancement and Gang-Murder Special Circumstance Were Not Harmless Beyond a Reasonable Doubt.

The People acknowledge that the standard for prejudice resulting from the omission of the elements added by Assembly Bill 333 from the instructions on the gang enhancement is the constitutional standard under *Chapman v. California*, *supra*, 386 U.S. 18. We agree. "When a substantive change occurs in the elements of an offense and the jury is not instructed as to the proper elements, the omission implicates the defendant's right to a jury trial under the Sixth Amendment, and reversal is required unless 'it appears beyond a reasonable doubt' that the jury verdict would have been the same in the absence of the error." (*Tran*, *supra*, 13 Cal.4th at p. 1207.) The People argue this strict standard is met because "the prosecution presented evidence to satisfy [Assembly Bill] 333's requirements beyond a reasonable doubt, including evidence that both the charged and predicate crimes were committed for a reason beyond the reputational benefit to the gang."

Specifically, they argue that, as we observed on direct appeal, the "admissible evidence that [Appellants] were NSO gang members who traveled together, heavily armed and with masks, into the heart of their rival Berkeley gang's territory, there in broad daylight executed Charles Davis, the brother of a suspected Berkeley gang member, and did so to retaliate for what they thought was that gang's killing of one of their own NSO gang members a few weeks earlier" was "overwhelming." (*Anthony I*, *supra*,

32 Cal.App.5th at p. 1107; see also *id*. at pp. 1141-1142.) We agree that the admissible evidence overwhelmingly shows retaliation as the motive for Appellants' murder of Davis and meets the *Chapman* standard as to that amended element of the gang statute. However, as we shall discuss, reasonable doubt exists as to whether all other elements necessary to prove the gang enhancement and gang-murder special circumstance, as subsequently amended by Assembly Bill 333, were established by the evidence presented at the 2013 trial of this case.

For example, the People contend, "There was evidence of at least four predicate offenses, committed on separate occasions, the most recent of which was less than three years prior to the charged offenses," and that two of those offenses were committed by two or more gang members. Further, they contend that the gang expert, John Cunnie, testified that these offenses not only increased the reputation of the NGO gang but were a source of income to the gang and, in the case of illegal gun possession, enabled gang members to protect themselves from rival gangs.

The evidence may have been *sufficient* to show predicate offenses that met the new standards for a pattern of criminal gang activity. But the *Chapman* standard requires more than sufficient evidence. (*People v. Sek* (2022) 74 Cal.App.5th 657, 668 (*Sek*).)[25] And the People do not address the

---

[25] Appellants contend Cunnie's testimony about the pattern of criminal gang activity was not sufficient to meet the new requirements because the jury was instructed it could consider the current offense as a predicate act, focused on enhancing the gang's reputation as the common benefit of the offenses and included as predicate acts offenses committed by individual gang members. We need not resolve whether the testimony at the 2013 trial was sufficient to meet the new standards because on remand, if they choose to retry the gang enhancement, the People and Appellants will have the opportunity to proffer additional evidence that Assembly Bill 333 has made newly relevant. (*Sek, supra*, 74 Cal.App.5th at pp. 669-670.)

possible impact on the jury of the instructions (no longer correct) that, in determining whether a pattern of criminal activity had been proved, "[t]he crimes, if any, that establish a pattern of criminal activity, need not be gang-related" and that if it found a defendant guilty of a crime in this case it could consider that crime as one of the predicate acts.

Further, the jury was instructed on the definition of criminal street gang as it existed under the former section 186.22, subdivision (f), as an "ongoing organization, association, or group of three or more persons, whether formal or informal," rather than under the amended version, which requires an "ongoing, *organized* association, or group of three or more persons, whether formal or informal." While the parties cite no case law addressing the difference between the two, Appellants point to the legislative findings made in Assembly Bill 333, which shed some light on the meaning of "organized." Specifically, the Legislature found that "[t]he social networks of residents in neighborhoods targeted for gang suppression are often mischaracterized as gangs despite their lack of *basic organizational requirements such as leadership, meetings, hierarchical decisionmaking, and a clear distinction between members and nonmembers.*" (Stats. 2021, ch. 699, § 2 (d)(8), italics added.) From this we glean that something between a "social network" of neighborhood residents and a "formal" organization with all of the above-mentioned characteristics is required. Without any instruction on the new definitional language, the jury's finding that there was a criminal street gang here does not unequivocally mean it would have made the finding if instructed with the current definition.[26]

---

[26] Appellants point to Cunnie's testimony that NSO was an "informal gang" without all the formal characteristics as some criminal gangs, like Nuestra Familia, that operate in prison. However, the new definition retained the prior modifying language "formal or informal" and thus does not

Finally, complicating the assessment of prejudice here is the fact that the trial of this case took place before *People v. Sanchez* (2016) 63 Cal.4th 665 was decided, and therefore, not surprisingly, on direct review we identified aspects of Cunnie's testimony that did not meet the standards established in that case. (*Anthony I, supra,* 32 Cal.App.5th at pp. 1140-1141.) We found the *Sanchez* error harmless in the context of the then current law (*Anthony I,* at pp. 1141-1142), but that does not mean we can now conclude that, *coupled with the instructional error created by the amendment of section 186.22*, it was harmless beyond a reasonable doubt.

We agree with Appellants that "when a change in the law makes evidence relevant which was not relevant at the time of trial," "the defense did not have notice of what the elements were or a motive to introduce evidence related to those elements." The same, of course, is true for the People. For these reasons, the proper remedy for the instructional error regarding the elements of the gang-related gun enhancement and the gang special circumstance here, as Appellants acknowledge, is a reversal and remand of the enhancement and special circumstance, for retrial at the option of the People. (See *Lee, supra*, 81 Cal.App.5th at pp. 239, 246; *Lopez, supra*, 82 Cal.App.5th at p. 14; *Sek, supra*, 74 Cal.App.5th at pp. 669-670 [reversing gang-related gun enhancement and remanding for new trial where evidence was not introduced at trial because law at time would have rendered it irrelevant].)

---

require that the gang be a "formal" one. (See footnote 17, *ante,* p. 27.) Especially in light of this, we are not persuaded that the characteristics Cunnie attributed to the prison gangs he described as "formal," such as bylaws and established procedures for activities, are required under the new law.

### C. The Trial Court Did Not Abuse Its Discretion in Refusing, on Remand, to Dismiss the Prior Serious Felony Enhancements.

Appellants contend that the trial court abused its discretion in declining to strike the gang-related gun enhancements on remand from the direct appeal. We remanded for the trial court to exercise the discretion conferred on it by new legislation to strike or dismiss the consecutive 25-years-to-life sentences imposed for a gang-related principal's use of a firearm. (*Anthony I, supra,* 32 Cal.App.5th at p. 1158.) Specifically, section 12022.53, subdivision (h), now provides, "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law."

We need not address Appellants' arguments that the court abused its discretion in declining to strike the gang-related gun enhancements.[27] Having reversed those enhancements and remanded for possible retrial, the issue whether the court should have stricken enhancements that were based on the law as it existed prior to the amendment of the gang statute is moot. If the Appellants are retried and convicted on the gang-related gun enhancements under the amended statute, they will be resentenced and may address whether to strike any enhancements imposed after retrial based on the record at the time of resentencing. (*People v. Yanaga* (2020) 58 Cal.App.5th 619, 625-628.)

---

[27] This includes Appellants' argument that the court erred in not ordering new probation reports at the time of resentencing and the People's responsive arguments that Appellants forfeited the argument and in any event have failed to show prejudice.

At the original sentencing, the trial court imposed consecutive five-year sentences for Price and Campbell under section 667, subdivision (a), because they each had a prior serious felony conviction. On direct appeal, we remanded the case to the trial court to allow it to exercise its discretion to strike the consecutive five-year consecutive sentences it had imposed on Price and Campbell under section 667, subdivision (a), because at the time Appellants were originally sentenced the court was required to impose these sentences and under former section 1385, subdivision (b), lacked any discretion to strike those enhancements. (*People v. Garcia* (2018) 28 Cal.App.5th 961, 971.) Between the time of trial, however, and the decision on direct appeal, the Governor had signed Senate Bill No. 1393 (2017-2018 Reg. Sess.) which, effective January 1, 2019, amended sections 667, subdivision (a), and 1385, subdivision (b), to allow a sentencing court to exercise its discretion to strike or dismiss a prior serious felony conviction for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1–2.) We agreed with Price, Campbell and the People that the change in the law applied retroactively under *In re Estrada* (1965) 63 Cal.2d 740. (See *Garcia*, at pp. 971-973.) Thus, we remanded for that purpose. On remand, the trial court declined to strike the five-year enhancements for prior serious felony convictions, and Price and Campbell now contend that was an abuse of discretion.

"Case law and legislative history indicate that courts 'must evaluate the nature of the offense and the offender in deciding whether to strike a nickel prior [i.e., a five-year enhancement for a prior serious felony].' ([*People v.*] *Shaw* [(2020) 56 Cal.App.5th 582,] 586.) As with our review of a decision on a motion to strike a prior strike, '[w]e review a court's decision to deny a motion to strike a five-year prior serious felony enhancement for an abuse of

43

discretion.' (*Id.* at p. 5877.)" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637-638.)

"A trial court's refusal to strike a prior strike is an abuse of discretion only in limited circumstances. Examples are where the trial court was unaware of its discretion to dismiss; where the court considered impermissible factors; or where the sentencing norms established by the Three Strikes law produce an arbitrary or patently absurd result. It is not enough to show reasonable people might disagree about whether to strike a prior conviction. There is no abuse of discretion unless the trial court's decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Edwards* (2022) 76 Cal.App.5th 523, 528.)

"The trial court is not required to state reasons for declining to exercise its discretion to strike a strike. We presume the trial court has considered all relevant factors in the absence of an affirmative record to the contrary. When the record is silent as to the trial court's reasons for declining to strike a prior strike, we presume the court correctly applied the law.  Only in an extraordinary case—where the relevant factors manifestly support the striking of a prior conviction and no reasonable minds could differ—would the failure to strike be an abuse of discretion." (*People v. Edwards*, *supra,* 76 Cal.App.5th at p. 529.)

Price and Campbell contend the trial court mistakenly relied on the belief that it had previously denied a *Romero* motion[28] to dismiss a strike at

---

[28]  In *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), our Supreme Court addressed "whether a court may, on its own motion, strike prior felony conviction allegations in cases arising under the law known as 'Three Strikes and You're Out.' (§ 667, subds. (b)–(i), added by Stats. 1994, ch. 12, § 1, eff. Mar. 7, 1994; see also § 1170.12, added by initiative, Gen. Elec. (Nov. 8, 1994) [Proposition 184].)" (*Id.* at p. 504.)  The court held that the Three Strikes statute did not withdraw the courts'

the original sentencing hearing and said it was declining to strike the five-year enhancement "for the same reason it denied [A]ppellant's Romero motion to dismiss his 'strike' at the original sentencing hearing." Counsel misstates the record.

Counsel for Campbell stated she believed trial counsel for *Campbell* had filed a *Romero* motion at the time of the original sentencing and that the court had denied it. She sought to incorporate that earlier motion by reference. The trial court appears to have accepted her representation but, contrary to Price and Campbell's current argument, did not purport to incorporate or otherwise rely on any prior *Romero* ruling or decision.

Rather, the court observed, "[T]his is not a question of striking the prior for *Romero* purposes because that is not why this was sent back to me because that was done. The Court had that authority at the time of sentencing. It was denied. This is a separate, quite related authority the Court has to strike or not the five-year enhancement, but on the same representations and presentation you are submitting?" After Campbell's counsel submitted, the court denied the request to strike the five-year enhancement, stating, "To me, again, a classic situation for the imposition of the enhancement, and it doesn't seem any—that the interest of justice do not dictate that enhancements should be stricken as to either gentlemen . . . ."[29]

_____

statutory power to dismiss in furtherance of justice under section 1385. (*Ibid.*) Prior to *Romero*, the Court of Appeal had upheld the provision in section 1385 that previously deprived courts of discretion to strike prior serious felony allegations for purposes of the five-year enhancement imposed by section 667, subdivision (a). (*Romero*, at p. 516.)

[29] A further indication that the court understood the issue before it was distinct from any *Romero* motion is its statement the outset of the hearing explaining, "The sentences were all affirmed with the exception that between the original sentencing and 2013 and the issuance of the opinion on

The reference to "again" was plainly to the court's statement two pages prior in the transcript stating, with respect to the gang-related gun enhancement, that "this is indeed . . . a classic case for [the] applicability [of the vicarious gang gun enhancement applicable to any principal]," reciting the evidence indicating the three non-shooters, Anthony, Price and Campbell, were present at the time of the shooting, more than one of them was armed at the time, and there was "substantial planning" as indicated by the timing of the killing of Davis soon after the death of their fellow gang member, Ngo, coupled with the numerous telephone conversations in the days leading up to the killing of Davis.

In short, Price and Campbell have failed to demonstrate that the trial court abused its discretion in declining to dismiss their prior strike convictions.

### D.  Price and Campbell Waived and Forfeited the Argument That the Trial Court Should Have Obtained Supplemental Probation Reports.

Price and Campbell also contend the trial court erred by failing to obtain an updated probation report so it could consider whatever such a report may have shown about their conduct since the trial.  The People argue that Price and Campbell waived the argument because they failed to request

_____

appeal the law changed as to whether the Court had discretion or not to strike a gun use enhancements under [section] 12022.53 and to strike serious felony five-year priors under [section] 667[, subdivision] (a).  Prior to the changing of the law and at the time of the original sentencing, the Court had no such discretion.  That discretion has now been granted to the Court because these gentlemen's appeals were not final.  It applied retroactively to them, and so the court of appeal sent it back for me to exercise my discretion on those issues."

46

that the trial court obtain an updated probation report, citing *People v. Franco* (2014) 232 Cal.App.4th 831 (*Franco*).

In *Franco*, the court held that the failure, by a defendant who was not eligible for probation, to request a supplemental probation report or object to proceeding without one resulted in "waiver of a supplemental report in the trial court and forfeiture of the right to object to the absence of such a report on appeal." (*Franco, supra*, 232 Cal.App.4th at p. 834.) This is so, the court held, "even where, for instance, the issue before the sentencing court was whether to exercise discretion to dismiss a strike under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497." (*Ibid.*) By statute and by rule, the court must request a presentence investigation report only where the defendant is eligible for probation or "a report is needed to assist the court with other sentencing issues, including the determination of the proper amount of restitution fine." (Cal. Rules of Court, rule 4.411, subd. (a)(1)(B); § 1203, subds. (b) & (g).) It must request a supplemental report "if a significant period of time has passed since the original report was prepared." (Cal. Rules of Court, rule 4.411, subd. (a)(2).) The courts have held that a supplemental report is necessary only in the circumstances in which a report is required in the first instance, i.e., when the defendant is eligible for probation or a report is necessary to assist the court with other sentencing issues such as the amount of a restitution fine. (*People v. Johnson* (1999) 70 Cal.App.4th 1429, 1431-1432.) Since their prior strike convictions rendered Price and Campbell ineligible for probation (see *People v. Superior Court (Roam)* (1998) 69 Cal.App.4th 1220, 1229), the court was not required to obtain a supplemental report in this case. Certainly, the court had discretion to order supplemental reports, but neither Price nor Campbell requested that it do so.

47

Finally, Price and Campbell argue that *Franco* and *People v. Johnson* were not decided in the context of resentencing under section 1176.2 [former section 1170.95]. That is true. However, they fail to explain why cases holding the failure to request a report or to object to the absence of one constitutes a waiver and forfeiture of any error should not apply in the context of a resentencing proceeding under section 1176.2. To be sure, a supplemental report may be helpful in that context, just as it may be where the trial judge is deciding whether to dismiss a strike or strike an enhancement. Yet in the latter case, waiver and forfeiture doctrines apply.[30]

We note that the waiver and forfeiture in this instance may be of little consequence since we are remanding both for further proceedings in connection with section 1172.6 and for a retrial at the option of the People on the gang-related special circumstance and enhancement. Either or both of these proceedings may result in additional sentencing proceedings, and in that context, Appellants will not be barred from requesting supplemental probation reports at that time.

### E. The Second Degree Murder Convictions Having Properly Been Stricken Under Senate Bill 1437 for Campbell, Price and Flowers, the Multiple-Murder Special Circumstance Must Necessarily Be Stricken as to Those Appellants.

Price, Campbell and Flowers, none of whom was driving the car during the escape attempt in which the driver and pedestrian were killed, argue the court failed to strike the multiple-murder special circumstance after it

---

[30] Nor is there any merit in Price and Campbell's argument that failing to request such a report amounted to ineffective assistance of counsel. Counsel for Price and Campbell may well have determined that supplemental probation reports would not have benefited their clients. Price and Campbell do not assert that their post-conviction conduct was such that it could have made a difference in the trial court's resentencing decisions.

vacated the second degree murder convictions for those killings. The People agree that "once the court vacated counts 2 and 3, the multiple-murder special-circumstance finding also had to be vacated" as to Price and Campbell.[31] The People concede that the trial court did not explicitly do so although they point out that the abstracts of judgment do not reflect that (or the gang-related) special circumstance finding. We agree that a remand is appropriate for the trial court to explicitly strike the multiple-murder special circumstance as to Price, Campbell and Flowers. Further, the life without parole sentences for these Appellants must likewise be vacated until and unless the People retry the gang-related special circumstance allegations and the jury, based on instructions under the amended statute, again finds them true.

### F. Appellants Price, Campbell and Flowers Are Not Entitled to Relief Under Section 1172.6 from Their Convictions for Evading a Peace Officer and Causing Death.

Appellants Price, Campbell and Flowers contend that they were entitled to relief under section 1172.6 from their convictions of evading a police officer proximately causing death under Vehicle Code section 2800.3, subdivision (b), as to which the trial court lifted the stay after vacating the second degree murder convictions. The arguments are difficult to follow, but these Appellants appear to argue that these convictions were, in essence, murder convictions that were based on the same facts and natural and

---

[31] Flowers filed his joinder in the other Appellants' arguments after the People filed their respondent's brief. We assume that because the evidence indisputably showed that Anthony was driving the Cadillac when it caused the collisions that killed Ross and Perea, the People would agree that Flowers is similarly situated to Price and Campbell with respect to the deaths of those two individuals and, as such, is entitled to the same relief.

probable consequences theory as the second degree murder convictions and thus did not require personal intent to kill.

The People contend that section 1172.6 provides resentencing relief for defendants convicted of murder, attempted murder and manslaughter but not for violations of Vehicle Code section 2800.3, subdivision (b). Section 1172.6, the People argue, requires proof that the petitioner could not presently be convicted of murder or attempted murder because of changes to sections 188 or 189, which does not apply because nothing in the amendments to those two statutes changed Vehicle Code section 2800.3.

We agree with the People and find Appellants' arguments meritless. Vehicle Code section 2800.3 is not denominated "murder," but rather, is entitled "Death or serious bodily injury proximately caused by flight from pursuing peace officer . . . ." (Veh. Code, § 2800.3.) Nor are its elements the same as the elements of murder. Under the law as amended, murder requires either an intentional killing, with express or implied malice (or, not relevant here, acting with reckless indifference to human life and as a major participant, aiding and abetting in the commission of certain felonies that result in death). The elements of the crime of flight from pursuing officer proximately causing death under Vehicle Code section 2800.3 are willful flight or attempt to elude a peace officer proximately causing death. More specifically, as the jury was instructed in this case, to find a defendant guilty of that crime, the People had to prove that a peace officer was pursuing the defendant and the defendant was driving a vehicle,[32] intended to evade the peace officer, while driving willfully fled from or tried to elude the pursuing

_____

[32] Anthony was indisputably the driver, and the other Appellants presumably were found guilty on an aiding and abetting or conspiracy theory, which none of them has argued is impermissible.

officer, and in doing so caused the death of someone else.  Further, the jury was instructed it had to find that there was a lighted red lamp visible from the front of the peace officer's vehicle, the defendant saw or should have seen the lamp, the officer's vehicle was sounding a siren as reasonably necessary, the officer's vehicle was distinctively marked and the officer was wearing a distinctive uniform.  (See CALCRIM No. 2180.)  Finally, the punishment for murder and evading a peace officer causing death are not the same.  Second degree murder is punishable by "imprisonment in the state prison for a term of 15 years to life" (§190, subd. (a)); evading a peace officer causing death is punishable by imprisonment in the state prison for a determinate term of 4, 6 or 10 years.  (Veh. Code, § 2800.3, subd. (b).)

Finally, section 1172.6 does not expressly provide relief to persons convicted under Vehicle Code section 2800.3.  To be entitled to relief, a petitioner must show three things:  (1) a complaint, information or indictment that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine; (2) he was convicted after trial or accepted a plea of murder, attempted murder or manslaughter; and (3) he could not presently be convicted of those crimes because of changes to sections 188 or 189 made effective January 1, 2019, or in 2021 when the Legislature amended section 1172.6.[33]  (§1172.6, subd.(a)(1)–(3).)  Nothing in Senate

---

[33] In 2021, the Legislature added attempted murder and manslaughter to the crimes for which a defendant, charged with murder under a natural and probable consequences theory, could obtain relief.  (See Stats. 2021,

Bill 1437 or the subsequent amendments to the murder statutes changed the elements of, or the punishment for, a violation of Vehicle Code section 2800.3.

Appellants' contention that they are entitled to relief from the conviction for that offense, which is less serious than murder and, unlike murder, does not now and did not ever require a finding of malice aforethought, is not supported by the language or history of Senate Bill 1437. Nor do Appellants argue, much less cite any authority indicating that, in eliminating the natural and probable consequences doctrine as a basis for attempted murder or manslaughter liability in 2021, the Legislature intended to eliminate that doctrine or for other crimes involving homicide.[34] Appellants do not contend that the 2021 amendment encompassed Vehicle Code section 2800.3.

For the foregoing reasons, we reject Price, Campbell and Flowers's argument that they were entitled to relief from their section 2800.3 convictions under section 1172.6.

_____

ch. 551.) It also renumbered former section 1170.95 to 1172.6. (Stats. 2022, ch. 58, § 10.)

[34] We note that the elements of causing death while attempting to evade a peace officer set forth above are not only different from those of murder but are also different from the elements of attempted murder and those of manslaughter. (*Compare* Veh. Code, § 2800.3 *with People v. Smith* (2005) 37 Cal.4th 733, 739 [elements of attempted murder] and § 192 [manslaughter].)

### G. Price and Campbell's Arguments That a New Sentencing Hearing Is Required Because the Trial Court Failed to State the Reasons for Sentencing Them to an Upper Term on Count 4 and a Consecutive Term on Count 5 Were Forfeited; Resentencing Is Nonetheless Required Because of Recently Enacted Ameliorative Sentencing Legislation.

Price and Campbell argue that the sentences imposed by the trial court for the Count 4 and Count 5 violations of Vehicle Code Section 2800.3 must be reversed and remanded because the court failed to state reasons for imposing the aggravated 10-year term on Count 4 and the consecutive sentence for Count 5. Flowers joins in these arguments.

The People contend that Appellants forfeited these issues by failing to object below. The People also contend that any error was harmless because it is not reasonably probable that a result more favorable to Appellants would have been reached in the absence of the error. As to Count 4, the People point out that at the original sentencing, the court imposed (and then stayed) the aggravated term and stated as reasons that: the victims were vulnerable; each Appellant engaged in a pattern of violent conduct and is a serious danger to society; their prior convictions are numerous and of increasing seriousness; they previously served a term in prison; they were on probation or parole at the time of the offense; their performance on probation or parole was unsatisfactory; and these aggravating circumstances outweighed those in mitigation. As to the consecutive sentence on Count 5, the People contend any error was harmless because there was no reasonable probability of a different sentence on remand, as Counts 4 and 5 involved the deaths of two separate victims, in addition to the victim of the first degree murder, and the court stated at the original sentencing that it was imposing consecutive sentences on counts 1, 2 and 3 due to the "three separate victims . . . and . . . separate acts of violence."

In his reply brief, Price adds an argument that "[r]egardless of the failure-to-state-reasons error, [Senate Bill No.] 567 is independently retroactive under [*People v.*] *Jones* [(2022) 79 Cal.App.5th 37, 44-46 (*Jones*)] and [*People v.*] *Flores* [(2022) 73 Cal.App.5th 1032, 1039] and requires remand for new and full section 1170.95 and A139352 sentencing hearings."

We agree with the People that Appellants forfeited their claims of error concerning the trial court's failure to state reasons for imposing an upper term on Count 4 and a consecutive term on Count 5 by failing to raise the issue in the trial court.[35] (*People v. Scott* (1994) 9 Cal.4th 331, 353, 356.) However, the argument raised in Price's reply brief regarding Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) was neither forfeited nor waived because that legislation was enacted well after completion of the trial court proceedings that are the subject of this appeal and after Price's and Flowers's opening briefs were filed. (See *Jones*, *supra*, 79 Cal.App.5th at p. 44, fn. 11 [Sen. Bill 567 was signed by Governor on October 8, 2021].) We therefore turn to that argument.

Senate Bill 567, which took effect on January 1, 2022, "amended section 1170, subdivision (b), to specify that, when a sentencing court chooses a term from a statutory triad, the chosen term shall not exceed the middle term, unless the facts supporting the aggravating circumstances are (1) established by the defendant's stipulation to them, (2) proven to a jury (or to a court, if jury is waived) beyond a reasonable doubt, or (3) based on prior

---

[35] Price and Campbell also contend that the court erred because consecutive sentencing was not mandatory under section 667, subdivision (c)(6), because the Count 4 and Count 5 convictions occurred on the same occasion and arose from the same set of operative facts. We reject this argument because, as the People point out, Appellants cite no evidence indicating the trial court thought consecutive sentences were mandatory under that provision rather than discretionary.

convictions evidenced by a certified record of conviction. (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding § 1170, subd. (b)(1)–(3), by amendment.)" (*Jones*, *supra*, 79 Cal.App.5th at p. 44.) "Senate Bill 567 also added a provision that requires the court to impose the low term if the defendant's psychological, physical, or childhood trauma was a contributing factor in the commission of the offense, 'unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice.' (Stats. 2021, ch. 731, §§ 1.3, 3(c), adding § 1170, subd. (b)(6), by amendment.)" (*Ibid*.) Here, it does not appear that all of the aggravating factors listed by the trial court for imposing the upper term sentence on Count 4 meet the requirements of section 1170, subdivision (b), or that the court would necessarily impose the same sentence if it relied only on those aggravating factors that are now permitted under that section. Nor is it clear whether Appellants had the opportunity to present to the sentencing court information about the factors in subdivision (b)(6) of section 1170 about psychological, physical, or childhood trauma being contributing factors in the commission of the offense. For that reason, a remand for full resentencing as to Price, Campbell and Flowers is appropriate. (*Jones*, at p. 46, citing *People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Flores*, *supra*, 73 Cal. App. 5th at pp. 1038-1039.)

### H. Price's Argument That the Trial Court Erred When It Denied Appellant's Section 1172.6 Petition Without Prejudice After Appointing Counsel to Represent Him Fails Because He Has Not Established Any Prejudice.

Price (joined by Anthony and Flowers) contends the trial court exceeded its statutory jurisdiction in denying the form petition he filed on his own behalf without prejudice after it appointed counsel to represent him and stated that counsel would be responsible for filing any petition under

section 1170.95. He further contends that the court violated his right to due process because he was not provided notice or an opportunity to be heard regarding the court's intent to do so.

As Appellant acknowledges, counsel subsequently filed a petition for resentencing on Price's behalf accompanied by a declaration of counsel. According to Appellant, however, that petition was "defective on its face because it did not include a declaration by [A]ppellant—the petitioner." A declaration such as the one Price executed under penalty of perjury is "necessarily part of the prima facie stage and is *evidence* in support of the mandatory prerequisite [that] '[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 . . . (§1170.95, subd. (a)(3)), while counsel's 'information and belief' declaration has no such legal effect." Because counsel's declaration failed to satisfy the prerequisites for relief, Appellant maintains, the court should have denied it without prejudice and its "ruling denying prima facie section 1170.95 relief is void."

The People contend, and we agree, that Price has shown no prejudice from the claimed error because counsel filed the new petition and the trial court "considered and denied [it] on the merits." Price is, therefore, "in the same position as he would have been if the court had ruled on his original petition."[36] Our review of the record confirms the People's assertion that the court treated counsel's declaration as true as to all statutory elements, "notwithstanding the absence of the required declaration by Price, and proceeded to determine whether Price established a prima facie case for

---

[36] The People also argue that the record provided by Price does not show that he received no notice of the court's intended action or that his counsel ever objected to the dismissal of his petition.

56

relief. The People did not object to the lack of a personal declaration." Indeed, the court did not indicate there were any missing elements in petitioners' prima facie showing but instead held the record of conviction, including the instructions and verdicts, as a matter of law precluded relief. Therefore, any error was harmless.[37]

I. **Price's and Campbell's Arguments About Claimed Errors in the Abstracts of Judgment Regarding Calculation of Custody Credits, Administrative Fees and Clerical Errors Are Moot.**

Price and Campbell contend that the trial court erred by failing to ascertain and order custody credits and delete unpaid administrative fees and that there are clerical errors in the abstracts of judgment. The People agree that there is an error in the abstract of judgment for Price, in regard to custody credits, and as to Price, Campbell and Flowers that, in light of new legislation (§ 1465.9, subd. (a); Stats. 2020, ch. 92, § 62) their imposed probation investigation fees of $250 must be vacated.

We need not address these arguments at this juncture because, as to Price, Campbell and Flowers, we are remanding the matter for full resentencing. Appellants may raise any arguments pertaining to sentencing at that time.

Price also contends he received ineffective assistance of counsel at the resentencing proceedings. We have addressed all of the claimed failures he attributes to his resentencing counsel and our rulings on those matters render the ineffective assistance of counsel claim moot, because, as to each, we have found no error or have granted relief on the merits. (See Part E

---

[37] The issue is also moot in light of our remand for an evidentiary hearing under section 1172.6. We presume the People will not object on remand to the hearsay nature of counsel's petition and that if they do, counsel will resubmit Appellants' in propria persona petitions or new petitions signed by Appellants under penalty of perjury.

(dismissal of multiple-murder special circumstance); Part D (new probation report); Part G (statements of reasons for Count 4 upper term sentence and Count 5 consecutive sentence); Part B (abuse of or failure to exercise discretion before imposing consecutive 25-years-to-life enhancement under section 12022.53); Part C (abuse of or failure to exercise discretion before sentencing Appellant to five-year section 667, subdivision (a) enhancement); and Part H (failure to independently determine custody credits).)[38]

## J. We Need Not Address Flowers's Arguments About the Verdicts and Trial Record Because We Are Remanding the Section 1172.6 Proceeding for an Evidentiary Hearing.

Flowers's brief on appeal is primarily a joinder in the other Appellants' arguments. He makes two new points, although he fails to explain their impact on the issues presented here. The first is that the jury did not explicitly find that he was the shooter. The second is that the prosecutor repeatedly referred during closing argument to the natural and probable consequences theory and that this rendered the instruction on that theory prejudicial.

We agree that the instructions and verdicts on the special circumstances did not require the jury to make an explicit finding as to which of the Appellants shot and killed Davis. Specifically, it was instructed, based on CALCRIM No. 702, that "[i]n order to prove these special circumstances [gang murder and multiple murder] for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor or conspirator, the People must prove the defendant acted with the intent to

---

[38] We need not address and therefore express no view regarding Price's claim that his counsel in the resentencing and remand proceedings was ineffective.

kill[39] and that "[t]he People do not have to prove that the actual killer acted with the intent to kill in order for these special circumstances to be true." Given this instruction, the jury's finding on the special circumstances as to any particular Appellant, including Flowers, meant either that he intended to kill Davis or that he was the actual killer.

Flowers may, on remand, argue that the evidence does not show he was the actual killer and/or that it does not show he acted with intent to kill. As indicated by our opinion on direct appeal, the trial record will make such arguments challenging, but he is not foreclosed from arguing the point and presenting any additional evidence pertinent to it.

As to the argument about the effect of the closing arguments, again, Flowers and the other Appellants may make such arguments again in the evidentiary hearing, at which they can discuss the trial evidence, any new evidence and the record of conviction, including but not limited to the effect of the jury instructions and counsels' closing arguments. Such arguments are relevant but not necessarily dispositive of the resentencing issues. (Cf. *In re Lopez, supra*, 14 Cal.5th 562, 590 [prosecutor's mere reliance on invalid theory will not overcome strong showing of harmlessness based on review of entire cause, including evidence, and consideration of all relevant circumstances].)

In short, Flowers's arguments, while providing support for the argument that an evidentiary hearing should be conducted under section 1172.6, do not mandate that relief from the first degree murder conviction be granted. Rather, it will be for the trial court, based on the record before it, including any new evidence presented at the evidentiary

---

[39] The jury was also instructed that the People had to prove beyond a reasonable doubt that the defendant acted with intent to kill.

hearing and the arguments made by counsel at that time, to determine "whether [appellants] committed murder under a still-valid theory." (*People v. Clements, supra*, 75 Cal.App.5th 276, 294.)

## DISPOSITION

The trial court's denial of relief from Appellants' first degree murder conviction under section 1172.6 is reversed and that matter is remanded with directions to issue an order to show cause and hold an evidentiary hearing. The trial court shall determine, based on that hearing, whether Appellants are entitled to relief from their convictions of first degree murder for the killing of Charles Davis, and nothing in this opinion is intended to suggest what the trial court's determination should be.

The People have not challenged the trial court's decision to grant relief under section 1172.6 to Appellants Campbell, Flowers and Price on their convictions of second degree murder for the killings of Ross and Perea. Consistent with the trial court's grant of relief overturning those convictions and a lack of clarity on the disposition of the multiple-murder special circumstance under section 190.2, subdivision (3), we remand the matter to the trial court to strike that special circumstance as to Appellants Campbell, Flowers and Price.

We also affirm the trial court's denial of resentencing relief under section 1172.6 to Campbell, Flowers and Price on their convictions under Vehicle Code section 2800.3. However, we remand the sentencing on those convictions for reconsideration in light of the recent changes to section 1170, subdivision (b), effected by the enactment of Senate Bill 567.

We reverse the gang-murder special circumstances and gang enhancements based on the recent amendments to section 186.22 in light of our holding that those amendments are retroactively applicable to

60

Appellants.  On remand, the People shall have the option to retry Appellants on the gang-related special circumstance (section 190.2, subdivision (a)(22)) and the gang gun enhancement (section 12022.53, subdivision (h)).  If they choose not to do so, the court shall resentence Appellants accordingly.

In all other respects, the trial court's rulings are affirmed.

_____
STEWART, P.J.

We concur.


_____
MILLER, J.


_____
MARKMAN, J.*


*People v. Campbell* (A162472); *People v. Price* (A162488); *People v. Anthony* (A162623); *People v. Flowers* (A163277)

_____

\* Judge of the Alameda Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:Alameda County Superior Court

Trial Judge:        Hon. Thomas M. Reardon

Counsel:

Audrey R. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant Rafael Campbell.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant Anthony Price.

Cliff Gardner and Brooke Acevedo, under appointment by the Court of Appeal, for Defendant and Appellant Stephon Anthony.

Barry Morris, under appointment by the Court of Appeal, for Defendant and Appellant Samuel Flowers

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Seth K. Schalit and Bridget Billeter, Deputy Attorneys General, for Plaintiff and Respondent.